# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TERRANCE FRANK TRIPPETT, *et al.*, :
    *Plaintiffs*, :
       :
v. : CIVIL ACTION NO. 18-CV-4958
       :
WILLIAM MCCULLOUGH, *et al.*, :
    *Defendants*. :

## MEMORANDUM

**PAPPERT, J.**                                           **DECEMBER 4, 2018**

*Pro se* Plaintiffs Terrance Frank Trippett, also known as Michael Drakes, and Andrea Sessom filed this lawsuit against William McCullough, Rodney Rodman, J. Doe Ferrell, the University Penn Police Department, the University Penn Trustee Committee Board, the University Penn Division Public Safety, the University Penn Pharmacy Company Hospital, the Attorney General in Philadelphia, the Commonwealth of Pennsylvania Adult Probation-Parole Department in Philadelphia, the City of Philadelphia Law Department, Charles J. Hoyt, Michael DeMarco, Larona Y. Scurry, Teressa H. Wiggins, Louis Petrecco, C. Denshuick, Rose Rutledge, and Lindsey Prendergast. (ECF No. 3.) They have also filed Motions for Leave to Proceed *In Forma Pauperis*. (ECF Nos. 1, 2.) For the following reasons, the Court will grant Trippett and Sessom leave to proceed *in forma pauperis* and dismiss all claims except for the claim that Louis Petrecco retaliated against Trippett.

### I

### A

In May of 2013, Trippett was charged with one count of retail theft-take

1

merchandise. *Commonwealth v. Drakes*, Docket No. CP-51-CR-0006408-2013 (Phila. Ct. Common Pleas). He pled guilty and was sentenced to three years of probation. *Id.*

In October of 2014, Trippett was again charged with retail theft-take merchandise. *Commonwealth v. Drakes*, Docket No. CP-51-CR-0012937-2014 (Phila. Ct. Common Pleas). He pled guilty and was sentenced to "time in to 23 months incarceration plus 2 years reporting probation" and was immediately paroled. *Id.*

On December 5, 2014, Trippett was charged with theft by unlawful taking-moveable property and receiving stolen property. *Commonwealth v. Drakes*, Docket No. MC-51-CR-0040962-2014 (Phila. Municipal Ct.). These charges stemmed from the theft of a Coach bag from the Penn Medicine Hospital Cardiology Department. (*See* Compl. at 16.) Trippett was found not guilty of both charges at a trial held on April 6, 2015. *Commonwealth v. Drakes*, Docket No. MC-51-CR-0040962-2014 (Phila. Municipal Ct.).

On March 13, 2015, Trippett filed in this Court a Complaint pursuant to 42 U.S.C. § 1983 against the City of Philadelphia, Officer O'Neill, and the Philadelphia Police Department. *Trippett v. City of Phila.*, Civ. A. No. 15-1208 (E.D. Pa.). The case was assigned to the Honorable Gerald A. McHugh. In his Complaint, Trippett raised claims related to Officer O'Neill's handling of an incident where Trippett had been hit by a vehicle while crossing the street. In March of 2018, Trippett informed the Court that he had lost his home, belongings, and identification in a house fire that occurred on February 28, 2018. Orders, *Trippett v. City of Phila.*, Civ. A. No. 15-1208 (E.D. Pa.) (ECF Nos. 32, 33.) The last docket entry reflects that a settlement conference was scheduled to occur on November 29, 2018. Order, *Trippett v. City of Phila.*, Civ. A. No. 15-1208 (E.D. Pa.) (ECF No. 39).

Subsequently, on October 17, 2016, Trippett filed in this Court a Complaint pursuant to 42 U.S.C. § 1983 against the Commonwealth of Pennsylvania, former District Attorney Seth Williams, Detective William McCullough, and Penn Medicine. *Trippett v. Commonwealth of Pa.*, Civ. A. No. 16-5467 (E.D. Pa.). The case was assigned to Judge McHugh. In his Complaint, Trippett raised claims of false arrest and false imprisonment related to the theft charges noted above. His claims against the Commonwealth and Seth Williams were dismissed with prejudice. Order at 2, *Trippett v. Commonwealth of Pa.*, Civ. A. No. 16-5467 (E.D. Pa.) (ECF No. 2.) Trippett subsequently filed an Amended Complaint, naming the Commonwealth of Pennsylvania, Seth Williams, Detective McCullough, Detective Raymond Rodman, Officer J. Earns, Jill Kaman, Elda Goss, and the Penn Medicine Heart Institute Presbyterian Hospital as Defendants. Am. Compl., *Trippett v. Commonwealth of Pa.*, Civ. A. No. 16-5467 (E.D. Pa.) (ECF No. 10). By Memorandum and Order entered on September 29, 2017, Judge McHugh granted the Motion to Dismiss filed by the Defendants. Memorandum and Order, *Trippett v. Commonwealth of Pa.*, Civ. A. No. 16-5467 (E.D. Pa.) (ECF Nos. 18, 19.)

B

The Complaint consists of 170 pages, many of which are exhibits. They allege that on February 20, 2016, Trippett was falsely accused of attempting to fill a fraudulent prescription at the University of Pennsylvania's Hospital Pharmacy. (Compl. at 13.)[1] The exhibits to the Complaint indicate that Rose Rutledge was the

---

[1] The Court uses the pagination assigned to the Complaint by the CM/ECF docketing system.

3

Pharmacy Technician working on that date. The exhibits also indicate that Lindsey Prendergast was a hospital employee who ascertained that Trippett was not a Penn patient and that the prescription had been signed by a non-Penn physician.

Trippett was taken to the University of Pennsylvania's Security Office, where was questioned and then transported to the University of Pennsylvania's Police Department. (*Id.*) While there, he was questioned by Detectives William McCullough and Rodney Rodman. (*Id.*) Trippett was detained for "numerous hours" until a Public Safety Security Officer "stated that he had solicited [a] pharmacy worker to call [Trippett's] cell phone and ask him to come back to the pharmacy and pick up his medication." (*Id.*) Trippett was released, but Detectives McCullough and Rodman "confiscated [his] Pennsylvania State Identification Card without issuing a property item receipt." (*Id.*)

On April 6, 2016, Trippett was contacted by his former attorney, William B. Lawson, to collect a settlement check for $3,500.00. (*Id.* at 15.) He tried to open a bank account to deposit the check but could not without his identification card. (*Id.*) Trippett therefore "had to hide his settlement case money in his bedroom drawer." (*Id.*) Three days later, Trippett had a heart attack and was transported to the Temple University Hospital, where he remained "pending heart surgery." (*Id.*) Trippett alleges that he requested to be released on April 13, 2016, when "someone . . . anonymously called the hospital and fabricated a call that [his] daughter . . . was shot and killed." (*Id.*)

Upon arriving home, Trippett's mother and brother kept asking him about his settlement money. (*Id.*) Trippett took $100.00 from where he had hidden the money

and went to the pharmacy to pick up a prescription for chest pains. (*Id.*) After coming home, Trippett laid down to rest and then heard his mother "hollering at a man about searching through her house." (*Id.*) Trippett alleges that while he was at the pharmacy, Detectives McCullough and Rodman had entered the residence and went into his bedroom and the bedroom used by his niece, Andrea Sessom, and her two children. (*Id.*) Sessom and her children were scared "because McCullough had his gun discharged out his waist band." (*Id.*)

Trippett heard his mother arguing with Detective McCullough about going into the residence without an arrest warrant. (*Id.*) When Trippett got up and came to the top of the steps, Detective McCullough saw him and "pointed his gun at [him] and [ran] up the steps and handcuffed [him] and guided [him] out of the house into an unmark[ed] dark blue car." (*Id.*) Trippett asked the Detectives to take him to a hospital because he was "experiencing a heart attack," but the Detectives "ignored [his] plea." (*Id.* at 15-16.) Detective McCullough mentioned Trippett "beating a theft case that he has prior investigated concerning a theft of a coach bag on display at the Penn Medicine Hospital Cardiology [Department]." (*Id.* at 16.) Trippett believed that the Detectives were harassing him because of his acquittal in the theft case. (*Id.*)

The Detectives took Trippett to a holding cell at the University of Pennsylvania Police Department. (*Id.*) Trippett alleges that his chest pains were "getting more severe," so he showed the Detectives his armband from Temple Hospital. (*Id.*) Subsequently, Trippett was transported to the 18th Precinct of the Philadelphia Police Department for processing. (*Id.*) Trippett again asked to see a doctor but was ignored. (*Id.*) After "10 hours of pain and suffering" Trippett experienced another heart attack.

(*Id.*)  Officials transported him to Mercy Philadelphia Hospital, where Trippett remained for five days.  (*Id.*)

After being released from the hospital, Trippett was taken to the Philadelphia Detention Center.  (*Id.*)  His bail was set at $2,500.00.  *Commonwealth v. Drakes*, Docket No. CP-51-CR-0004238-2016 (Phila. Ct. Common Pleas).  Trippett called his mother to use the settlement money in his bedroom to pay his bail, but she informed him that there was no money in the drawer.  (*Id.*)  Trippett alleges that the settlement money was seized by Detective McCullough and Rodman.  (Compl. at 16.)  Trippett appeared in court for a preliminary hearing on April 28, 2016, during which Rose Rutledge testified.  *See Commonwealth v. Drakes*, Docket No. CP-51-CR-0004238-2016 (Phila. Ct. Common Pleas); (Compl. at 17).  He posted bail on April 29, 2016.  *See Commonwealth v. Drakes*, Docket No. CP-51-CR-0004238-2016 (Phila. Ct. Common Pleas); (Compl. at 17).  The docket reflects that he was arraigned on May 19, 2016, on one count of criminal attempt-acquire or obtain possession of controlled substance by misrepresentation.  *Commonwealth v. Drakes*, Docket No. CP-51-CR-0004238-2016 (Phila. Ct. Common Pleas).  Ultimately, Trippett's attorney filed a motion to quash, and the Commonwealth requested to *nolle pros* the charge.  Both motions were granted on January 3, 2017.  *Id.*

Trippett goes on to allege that on May 22, 2016, after he was released on bail, he was "consequently arrested on a mysterious harassed retail theft that he did not commit[]."  (Compl. at 18); *see Commonwealth v. Drakes*, Docket No. MC-51-CR-0014808-2016 (Phila. Municipal Ct.).  He claims that the security guard at a Save-A-Lot supermarket was paid to fabricate a report that Trippett had been shoplifting.  (Comp.

at 19.)  Ultimately, the retail theft charge was withdrawn.  *Commonwealth v. Drakes*, Docket No. MC-51-CR-0014808-2016 (Phila. Municipal Ct.).

Trippett argues that on May 26, 2016, Probation Officer Larone Y. Scurry filed a violation of probation detainer in criminal action MC-51-CR-00010547-2014.  (Compl. at 19); *see Commonwealth v. Drakes*, Docket No. CP-51-CR-0012937-2014 (Phila. Ct. Common Pleas).  According to Trippett, this detainer was approved by Supervisors DeMarco and Wiggins.  (Compl. at 19.)  Trippett alleges that as the basis for the violation, Scurry wrote that she received a telephone call from Detective McCullough on April 12, 2016.  (*Id.*)  Detective McCullough allegedly stated that he had a warrant to search and arrest Trippett and asked Scurry where Trippett resided.  (*Id.*)  Trippett alleges that Scurry provided his address to Detective McCullough.  (*Id.*)

According to Trippett, Scurry "committed this same misconduct on October 17, 2017 with someone alleging that Trippett/Drakes [was] terrorizing her in his own residence which had never occurred."  (*Id.* at 20.)  He alleges that based on that information, Judge Palumbo issued a stay away order preventing Trippett from entering his own residence.  (*Id.*).  Scurry filed a violation of probation detainer against him on October 31, 2017; Trippett contends that this detainer was approved by Wiggins.  (*Id.*); *see Commonwealth v. Drakes*, Docket No. CP-51-CR-0006408-2013 (Phila. Ct. Common Pleas).  Trippett also contends that Hoyt is liable for the misconduct because of his role as Chief Probation Officer.  (Compl. at 22.)

Public records reflect that Trippett was ultimately found guilty of the probation violations.  *See Commonwealth v. Drakes*, Docket No. CP-51-CR-0006408-2013 (Phila. Ct. Common Pleas); *Commonwealth v. Drakes*, Docket No. CP-51-CR-0012937-2014

(Phila. Ct. Common Pleas). In each case, he was sentenced to "1 year county IP, followed by 2 years reporting probation." *Id.*

Trippett filed a citizen complaint against Detectives McCullough and Rodman. (Compl. at 20.) He alleges that in December of 2016, they "failed to comply in ample times specified by law and/or directive to that complaint." (*Id.*) He also filed a complaint in state court against Scurry in February of 2018. (*Id.*) He alleges that a copy was mailed to Chief of Probation and Parole Charles Hoyt at that time. (*Id.*)

Trippett goes on to state that on January 8, 2017, he went to the University of Pennsylvania Police Department "to find out what was the delay in their department responding to the filed complaint." (*Id.* at 21.) He took another copy with him "in case [they] alleged that they never received the first filed one." (*Id.*) Trippett claims that while he was there, Louis Petrecco, the Chief Director of Security, became "very unprofessionally angry and upset" and called him names after learning that Trippett had filed a complaint against Detectives McCullough and Rodman. (*Id.*) Petrecco threatened to not release Trippett's identification card or the $3,000.00 that had been confiscated from his residence. (*Id.*)

On February 11, 2017, Trippett received a phone call from Sergeant Ferrell of the University of Pennsylvania Police Department. (*Id.* at 22.) Sgt. Ferrell asked Trippett to come for an interview regarding his complaint on February 18, 2017. (*Id.*) At the interview, Trippett got his identification card back, but Sgt. Ferrell told him that he would need to speak to Trippett's mother and brother and that he would "need[] to look further into the situation about the confiscated money." (*Id.*) Trippett alleges that since then, he can "never seem to get a reasonable response" from any official. (*Id.*)

Based on the above allegations, Trippett and Sessom are raising claims pursuant to 42 U.S.C. § 1983 for: (1) "deprivation" under the Fifth Amendment; (2) Eighth Amendment violations because of cruel and unusual punishment, improper medical care, and pain and suffering; (3) illegal search and seizure under the Fourth, Fifth, and Fourteenth Amendments; (4) due process violations under the Fourth, Fifth, and Fourteenth Amendments; (5) illegal arrest under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments; (6) retaliation and denial of access to the courts under the First Amendment; and (7) false imprisonment under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. (*Id.* at 5-12.)[2] They also assert that the Defendants have conspired to interfere with their civil rights in violation of 42 U.S.C. §§ 1985 & 1986. (*Id.*) As relief, they seek $120,000.00 from each Defendant. (*Id.*) They also appear to seek an Order directing the Defendants to provide Trippett copies of all paperwork that he lost after the house fire. (*Id.* at 44-46.)

## II

The Court will grant Trippett and Sessom leave to proceed *in forma pauperis* because it appears that they are incapable of paying the fees necessary to commence this action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint

---

[2] The Fifth Amendment is not implicated here, as none of the Defendants are federal actors. *See Mutschler v. SCI Albion CHCA Health Care*, 445 F. App'x 617, 621 (3d Cir. 2011) (per curiam) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)).

contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory statements and naked assertions will not suffice. *Id.* Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013), *abrogated on other grounds by*, *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015). As Trippett and Sessom are proceeding *pro se*, the Court construes their allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III

### A

Although Trippett and Sessom purport to bring all claims jointly, the only claim directly involving Sessom is the Fourth Amendment illegal search and seizure claim raised against Detectives McCullough and Rodman. As noted above, Trippett and Sessom allege that the Detectives searched Sessom's room during the search of the house on April 13, 2016.

Pennsylvania's two-year limitations period applies to this claim. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Sessom's claim accrued when she "ha[d] a complete and present cause of action, that is, when she [could] file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted). Here, Sessom's illegal search and seizure claims accrued on April 13, 2016, when the alleged illegal search and seizure occurred. *See Woodson v. Payton*, 503 F. App'x 110, 112 (3d Cir. 2012) (concluding that statute of limitations began on

date when plaintiff "indisputably knew about the alleged faults of search and seizure"). Thus, Sessom needed to file her Complaint by April 13, 2018, for her claim to be timely filed. The Complaint was not filed until November 15, 2018.

B

1

Again, Trippett has sued the following individuals and entities, all of whom are connected to the University of Pennsylvania: William McCullough, Rodney Rodman, J. Doe Ferrell, the University Penn Police Department, the University Penn Trustee Committee Board, the University Penn Division Public Safety, Rose Rutledge, Lindsey Prendergast, and the University Penn Pharmacy Company Hospital.

a

First, Trippett cannot maintain his claims against Rutledge, Prendergast, and the University Penn Pharmacy Company Hospital. As noted above, Rutledge and Prendergast, who were apparently employed by the University Penn Pharmacy Company Hospital, were two of the witnesses to the events leading to Trippett's charge for criminal attempt-acquire or obtain possession of controlled substance by misrepresentation in Case No. CP-51-CR-0004238-2016. Nothing in the Complaint, however, suggests that these three Defendants are state actors. *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). Rather, the Complaint and the exhibits suggest that Rutledge and Prendergast simply answered the Detectives' questions and were not involved in the investigation. Reporting suspicious conduct to the police, and answering police questions about that conduct, without more, does not transform these individuals into state actors. *See Bailey v. Harleysville Nat'l Bank & Trust*, 188 F.

11

App'x 66, 68 (3d Cir. 2006) ("[I]n the absence of a conspiracy with the police to violate constitutional rights, a business's summons of a police officer to deal with a possible disturbance, does not make it a state actor."); *Cooper v. Muldoon*, No. 05-4780, 2006 WL 1117870, at *2 (E.D. Pa. Apr. 26, 2006) ("Merely calling the police [or] furnishing information to the police . . . does not . . . transform a private entity into a state actor."). Trippett's claims against Rutledge, Prendergast, and the University Penn Pharmacy Company Hospital will be dismissed.[3]

b

Trippett also sues the University Penn Police Department, the University Penn Division Public Safety (under which is the University Penn Police Department),[4] and the University Penn Trustee Committee Board. For purposes of § 1983, the University of Pennsylvania Police Department is a state actor because state law "endows [the department] with the plenary authority of a municipal police department in the patrol-zone territory, once the 'exclusive prerogative' of the City of Philadelphia." *Fleck v. Trs. Of Univ. of Pa.*, 995 F. Supp. 2d 390, 402 (E.D. Pa. 2014). However, the University Penn Police Department (and, by extension, the University Penn Division Public Safety), are not entities capable of being sued under § 1983. *See id.* Rather, the Trustees of the University of Pennsylvania is the proper entity to sue. *See Gaines v.*

_____

[3] The Complaint and exhibits also suggest that Rutledge testified at Trippett's preliminary hearing. Witnesses, however, enjoy absolute immunity from civil suit for damages based upon their proffered testimony. *See Briscoe v. LaHue*, 460 U.S. 325, 341-46 (1983). This immunity extends to pre-trial proceedings, such as preliminary hearings. *Williams v. Hepting*, 844 F.2d 138, 143 (3d Cir. 1988). Thus, even if Rutledge were a state actor, she would be immune from any claims based on testimony she proffered at the preliminary hearing.

[4] *See* https://www.publicsafety.upenn.edu/ (place cursor on "Departments" dropdown to see that the Police Department is a department of the Division of Public Safety).

*Univ. of Pa. Police Dep't*, No. 97-3381, 1997 WL 624281, at *3 (E.D. Pa. Oct. 7, 1997) (noting that "Penn's relationship to the Penn Police should be considered analogous to a municipality's relationship with its police department"). Accordingly, the University Penn Police Department and the University Penn Division Public Safety will be dismissed as Defendants.

To maintain a claim against the University Penn Trustee Committee Board, however, Trippett must allege that an official custom or policy caused the alleged violations of his constitutional rights. *See Bynum v. Trs. of Univ. of Pa.*, 115 F. Supp. 3d 577, 588 (E.D. Pa. 2015) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). The Complaint, however, fails to do so.

c

Trippett also sues Detectives McCullough and Rodman, Sergeant J. Doe Ferrell, Officer Denshuik, and Chief of Security Louis Petrecco. With respect to Officer Denshuik, nothing in the Complaint describes how he was responsible for violating Trippett's rights, whether due to his own misconduct or his deliberate indifference to known deficiencies in a policy or procedure that violated his rights. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *reversed on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Thus, Trippett cannot maintain his claim against Officer Denshuik at this time.

Trippett alleges that on February 18, 2017, he had an interview with Sgt. Ferrell with respect to his citizen complaint against Detectives McCullough and Rodman. (Compl. at 22.) During the interview, Sgt. Ferrell told Trippett that he would "need[] to look further into the situation about the confiscated money." (*Id.*) Trippett claims that

13

since then, he can "never seem to get a reasonable response." (*Id.*) To the extent that Trippett and Sessom seek to hold Sgt. Ferrell liable for not investigating the situation further, their claim fails. "[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (quotations omitted); *cf. Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."). Thus, Trippett's § 1983 claim against Sgt. Ferrell will be dismissed.

d

Trippett asserts several claims against Detectives McCullough and Rodman based upon events that occurred from February 20, 2016 until December of 2016, specifically, claims for false arrest, false imprisonment, illegal search and seizure, retaliation, denial of access to the courts, and failure to provide medical care.

Pennsylvania's two-year limitations period applies to Trippett's claims against Detective McCullough and Rodman. *See* 42 Pa. Cons. Stat. § 5524; *Wallace*, 549 U.S. at 387 (2007). As with Sessom's claim, Trippett's claims accrued when he "ha[d] a complete and present cause of action, that is, when [they could] file suit and obtain relief." *Dique* 603 F.3d at 185 (quotations omitted). Here, Trippett's illegal search and seizure claims accrued on April 13, 2016, when the alleged illegal search and seizure occurred. *See Woodson*, 503 F. App'x at 112 (concluding that statute of limitations began on date when plaintiff "indisputably knew about the alleged faults of search and seizure"). The false arrest and false imprisonment claims accrued that same day. *See*

*Wallace*, 549 U.S. at 389-90 & n.3; *LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011) (per curiam) (noting that a "claim of false imprisonment accrues when a person is detained without legal process (the claim[] ends once that person is held pursuant to legal process, such as when a person is bound over by a magistrate or arraigned on charges)"); *Singleton v. DA Philadelphia*, 411 F. App'x 470, 472 (3d Cir. 2011) (concluding that accrual of a claim for false arrest occurred on the date that the plaintiff "was arrested and charges were filed against him").[5] Likewise, the claim regarding failure to provide medical care accrued that day, as Trippett alleges that Detectives McCullough and Rodman refused to take him to a hospital for chest pains after arresting him. *See Rondon v. Passaic Cty. Jail*, 374 F. App'x 238, 240 (3d Cir. 2010) (per curiam). Finally, the retaliation claim accrued, at the latest, on May 26, 2016, when a violation of probation detainer was issued against Trippett based upon a phone call his probation officer had received from Detective McCullough. *See Gilarno v. Borough of Freedom*, 462 F. App'x 177, 180 (3d Cir. 2012). Thus, the limitations period applicable to these claims expired in April and May of 2018. Trippett, however, did not file his Complaint until November 15, 2018. His claims for false arrest, false imprisonment, retaliation, illegal search and seizure, and failure to provide medical care are untimely by several months and will be dismissed as time-barred.[6]

---

[5] Arguably, the false arrest claim could have accrued, at the latest, on May 19, 2016, when Trippett was arraigned. *See Wallace*, 549 U.S. at 397 (noting that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process"). In any event, the false arrest claim is clearly untimely using either date as the date of accrual.

[6] Nothing in the Complaint suggests that any tolling would apply to render these claims timely filed.

The only action taken by Detectives McCullough and Rodman that falls within the limitations period is the suggestion that they failed to respond to Trippett's citizen complaint in December of 2016. However, they do not suggest, and the Court does not discern, how this failure to respond to a citizen complaint violated their rights in any way. Thus, any claims regarding the Detectives' failure to respond to the citizen complaint will be dismissed.

e

Trippett next suggests that Chief of Security Petrecco retaliated against Trippett for filing a citizen complaint against Detectives McCullough and Rodman by threatening to not release his identification card or the $3,000.00 that had been confiscated from his residence. (Compl. at 21.) Given these allegations, Trippett will be permitted to proceed on this claim at this time.

2

a

Although Trippett has named the City of Philadelphia Law Department and the Commonwealth of Pennsylvania Adult Probation-Parole Department in Philadelphia as Defendants, he cannot maintain claims against them. These entities are not proper defendants under § 1983 because they "lack an identity separate from the municipality of which [they are] a part." *Draper v. Darby Twp. Police Dep't*, 777 F. Supp. 2d 850, 856 (E.D. Pa. 2011); *see also* 53 Pa. Cons. Stat. § 16257; *Zinser v. Adult Probation-Parole*

*Dep't of Montgomery Cty.*, No. 06-4387, 2007 WL 81940, at *1 (E.D. Pa. Jan. 8, 2007);

*Gremo v. Karlin*, 363 F. Supp. 2d 771, 780-81 (E.D. Pa. 2005).[7]

b

Trippett also names the "Attorney General, Phila., PA" as a Defendant. The

Court cannot discern, however, whether this is a reference to the Attorney General for

the Commonwealth of Pennsylvania or to the Philadelphia District Attorney. If

Trippett is referring to the Attorney General because of his supervisory position, there

are "two general ways in which a supervisor-defendant may be liable for

unconstitutional acts undertaken by subordinates." *Barkes*, 766 F.3d at 316 (3d Cir.

2014). First, a supervisor may be liable if he or she "'with deliberate indifference to the

consequences, established and maintained a policy, practice or custom which directly

caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty.*

*Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a

supervisor may be personally liable under § 1983 if he or she participated in violating

the plaintiff's rights, directed others to violate them, or, as the person in charge, had

knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Here,

the Complaint fails to establish either basis for liability against the Attorney General.

If Trippett is referring to the District Attorney of Philadelphia, they have also

failed to state a claim for relief. Once again, the Complaint fails to establish either

---

[7] Moreover, even if the Court were to construe Trippett's claims against these entities as claims against the City of Philadelphia, they are insufficient, as the Complaint fails to suggest that a municipal custom or policy caused the alleged violations of their rights. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009) (noting that the plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard).

basis for liability against the District Attorney in his supervisory capacity. Moreover, if Trippett has named the District Attorney based upon his role in pursuing Trippett's prosecution on behalf of the Commonwealth, the District Attorney is entitled to absolute immunity from such claims. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009). Accordingly, Trippett's claims against "Attorney General, Phila., PA" will be dismissed.

c

Finally, Trippett raises constitutional claims against Chief Probation Officer Hoyt, Supervisory Probation Officers DeMarco and Wiggins, and Probation Officer Scurry, regarding the violation of probation detainers that Scurry filed against him in two of his criminal matters. Essentially, Trippett suggests that Scurry is liable for filing false detainers against him, and that DeMarco and Wiggins approved these detainers. He also suggests that Hoyt is liable given his role as Chief Probation Officer. While not clear, he appears to suggest that he was falsely imprisoned because of these detainers.

These claims, however, are not cognizable under § 1983 at this time. "[T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005)

("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). The doctrine set forth in *Heck* has been extended to civil rights cases challenging parole and probation revocations. *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006); *Burton v. Delaware Cty. Court House*, No. 12-4175, 2012 WL 3223691, at *2 (E.D. Pa. Aug. 7, 2012).

As noted above, the dockets for Trippett's state criminal cases indicate that he was found guilty of violating his probation; nothing on the dockets indicates that he was successful in challenging these findings. Accordingly, Trippett cannot maintain these claims at this time. This is so regardless of whether *habeas* relief is still available to Trippett. *See Williams*, 453 F.3d at 179. The Court will dismiss the claims against Hoyt, DeMarco, Scurry, and Wiggins without prejudice to Trippett filing a new complaint only in the event that he is successful in challenging his probation revocations in state court or federal *habeas* proceedings.

C

Trippett also raises claims under 42 U.S.C. § 1985(2) & (3) against Petrecco, McCullough, and "all Penn University Police Department Officials." (Compl. at 19.) He suggests that officials from the Philadelphia Probation-Parole Department violated his rights under § 1985. (*Id.* at 18.) Trippett bases his § 1985 claims on his allegations that Trippett is "an Afro-American, male non-diploma, non-license pro se litigant who had filed a prior civil lawsuit civil rights claim against them." (*Id.*) He also suggests

that the Defendants violated § 1985 because of frustration that Trippett was "winning criminal cases investigated by their persons." (*Id.* at 19.) Trippett appears to suggest that the Defendants were involved in the fire that consumed his home, stating that his home was "mysteriously burned down to destroy all the [credible] litigation documents, evidentiary facts that was in his house in the living room where he slept by throwing a fire bomb into the wi[n]dow." (*Id.* at 18.)

> To state a claim under § 1985(2), a plaintiff
>
> must point to a federal or state proceeding with which the defendants have interfered. In the case of a state proceeding, he must allege that such interference was done to "deny to any citizen the equal protection of the laws." Otherwise, a claim under § 1985(2) must fail. Additionally, the Supreme Court of the United States has interpreted the second portion of § 1985(2) to require that the conspirators' actions in furtherance of their objective have some "racial, or perhaps otherwise class-based, invidiously discriminatory animus" and be "motivated by an intent to deprive their victims of the equal protection of the laws."

*Abuomar v. Commonwealth of Pa. Dep't of Corr.*, No. 4:14-CV-01036, 2017 WL 2972825, at *3 (M.D. Pa. July 12, 2017) (citations omitted). Here, although Trippett suggests that the Defendants discriminated against him based upon his race, nothing in the Complaint plausibly suggests that the Defendants conspired to interfered in a state or federal proceeding. Trippett's suggestion that the Defendants fire-bombed his house to destroy his litigation materials is based upon his own belief rather than any factual allegations. Thus, Trippett cannot maintain his claims under § 1985(2).

"[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or

property or the deprivation of any right or privilege of a citizen of the United States."
*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Farber v. City of Paterson*, 440 F.3d
131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly
conspired against a group that has an identifiable existence independent of the fact
that its members are victims of the defendants' tortious conduct").  Section 1985(3) was
not "intended to provide a federal remedy for 'all tortious, conspiratorial interferences
with the rights of others,' or to be a 'general federal tort law.'"  *Farber*, 440 F.3d at 134
(quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971)).  Here, however, even
liberally construed in the light most favorable to Trippett, the Complaint fails to set
forth any facts from which a conspiratorial agreement between the Defendants can be
inferred.  Moreover, it does not allege any facts regarding the role of any of the
Defendants in such a conspiracy or any overt acts taken by any Defendant in
furtherance of a conspiracy.

## D

Finally, Trippett vaguely asserts claims pursuant to 42 U.S.C. § 1986.  That
statute provides that:

> Every person who, having knowledge that any of the wrongs conspired to
> be done, and mentioned in section 1985 of this title, are about to be
> committed, and having power to prevent or aid in preventing the
> commission of the same, neglects or refuses to do so, if such wrongful act be
> committed, shall be liable to the party injured, or his legal representatives,
> for all damages caused by such wrongful act, which such person by
> reasonable diligence could have prevented; and such damages may be
> recovered in an action on the case . . . .

42 U.S.C. § 1986.  "[Section] 1986 constitutes an additional safeguard for those rights
protected under 42 U.S.C. § 1985, and 'transgressions of § 1986 by definition depend on
a preexisting violation of § 1985."  *Clark v. Carbaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994)

(quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)). Moreover, a plaintiff must allege that: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Id.* As discussed above, however, Trippett has failed to set forth a plausible § 1985 claim. Thus, he cannot maintain his § 1986 claims at this time.

## IV

For the foregoing reasons, the Court will grant Trippett and Sessom leave to proceed *in forma pauperis* and dismiss all claims, except for Trippett's claim that Petrecco retaliated against him for filing a citizen complaint against Detectives McCullough and Rodman. Because the Court has resolved all claims regarding events that directly affected Sessom, she will be dismissed as a Plaintiff. A separate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**